**IN THE UNITED DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**US FREEDOM FLYERS**, an
unincorporated association,

**LANE CAVINESS**, an individual,

**PATRICK AKERLUND, MICHAEL
ALZATI, ERIC W. ANDERSON,
MICHAEL G. BALLARD JR., BRIAN
BARANEK, MATTHEW BARBER,
CINDY BARRIONUEVO, KYLE
BAUDER, LARRY JAMES BEARCE, JR.,
ROBERT BELLMAN, BENJAMIN
BENDIBURG, DOUGLAS BERRY,
GREGORY BERRY, DOUGLAS
BOHNERT, LYNETTE BOTHA,
ASHLEY BROWN, CALEB BUEHRER,
RICHARD BULLOCK, JEFFREY
CAMPBELL, JON CARROLL, VERGIL
CASKEY, JAMES CASTOR, BRETT L.
CHAPMAN, NATHAN CHARBONEAU,
JARED CHILDS, RYAN
CHRISTOPHER, SHAWN CHURCHEL,
JOEL COLON, MARK CONNOR,
MICHAEL CORRIGAN, MATTHEW
CRONAUER, FRED CUNNINGHAM,
ROYAL DANZA, TODD DAVIS,
WILBERT DE MOYA, ELLIOT DE
SOUSA, BRYAN DEBOER, ERIC
DESANDRO, STEVE DIXON, CALEB
ELLIOT, JAMES ERICKSON, LUIS
ESQUIVIA, LEE ESTES, ROBERT
FRATTI, ROBERT FREEMAN,
RONALD FRY, TIMOTHY FRYE,
JONATHAN FUSSLE, TONY GAMBOA,
STEPHEN GASTON, DENNIS
GEBHARD, REZA GHODS, ROBBIE
GIBBS, MARK GILMAN, ROBERT
GIUDICE, ERIC GORDON, DANIEL
GREER, REXFORD T. HEIVILIN,
JASON HENNING, DARRELL
HERRING, DAVID HEWSON III,
KRISTOPHER HLEBECHUCK, TODD**

Case No. <u>1:22-cv-21477</u>

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

1

**HONTZ, ROBERT HOSPERS, DANIEL HUDSON, BRYCE HUESMAN, CHRISTIAN HUTCHCROFT, JESSE JOHANSEN, JOSHUA JUILLERAT, ROGER JUSTICE, VENANCIO KASSANDJI, JOHN KEARINS, DAVID KEEN, BETH KIRBY, CHAD KRAVETZ, IVEY LEACH, DANIEL LEE, JOSEPH LOSCHIAVO, ELIZABETH LOZANO, ANDREW LUTZ, BLYTHE LUTZ, RAFAEL MACARIO, MARIO MANZANO, DOUGLAS P. MAYO JR., WILLIAM K. MCLAUGHLIN, NICHOLAS MEIKLE, STEVEN MEISSNER, JEFFREY MICHONSKI, ANDREW MICKLER, DAVIN MILES, COREY MORRIS, STEVEN MURATORE, GREGORY MYERS, SHAWN MYERS, PETER NAPORA, HALEY OWENS, JOEL PARDO, MALANEY PEETE, LANCE PHILLIPS, PATRICK PHILLIPS, BRADLEY PIERSON, SIEGFRIED PITTET, GLEN PRONK, CHARLES RANDALL, PETER RAYMOND, SARAH RIEWER, NICHOLAS RIPI, JOSHUA ROBERTS, REBECCA ROBERTSON, ROBERT ROBERTSON, JOHN RODWAY, JASON ROGERS, CHRISTOPHER RUSSO, STEVE RUSSO, GREGORY SAMSON, KIMBERLY SCHRECK, GABRIEL SCHWARTZ, JOHN SCOTT, WILLIAM SERRITELLA, GENTRY SHELTON, TODD SNAZA, MICHAEL SOBCZAK, DONALD SORRENTINO, MARK SOUTH, SHAROLYN STANLEY, MICHAEL STARK, AUSTIN STATON, STEPHEN STATON, DAVID STILLMAN, PATRICK STONE, ELIZABETH STONEKING, FORREST STOWELLS, NEECIE SURBER, JOHN SWIFT, MICHELLE TATE, TODD TALIKKA, LAUREN TAYLOR, NICK TAYLOR, MARK THIEN, WILLIAM THOMPSON, BRANDON THOROUGHMAN, GERI TONDA,**

**RICARDO TORRES ABARCA, SERGEY USOVICH, GUSTAVO VERDES, JAMES VILLELLA, JOSHUA WEST, MATTHEW WIEDER, BART WILLIAMS, SEAN WOLF, FARSHAD ZARRABIAN,** individuals,

                    Plaintiffs,

     v.

**ATLAS AIR INC.,** a Delaware corporation,

**FLIGHT SERVICES INTERNATIONAL, LLC,** a Texas limited liability company,

**ENCOMPASSAIR, LLC,** an Alaska limited liability company, and

**JOHN W. DIETRICH, PATRICIA GOODWIN-PETERS, JEFFREY CARLSON,** individuals,

                    Defendants.

## <u>INTRODUCTION</u>

1.      Fundamentally, this case is about whether Americans should be required to choose between their livelihoods and being coerced into taking an experimental, dangerous medical treatment.

2.      It is also about the safety of America's airline industry. Should pilots – under federal regulation required to be among the healthiest workers in the United States – who have taken an experimental "vaccine" that is now shown to have potentially deadly, long-term side effects, be allowed to fly massive aircraft in our skies? While those who have (smartly) refrained from such a course be forced out of their jobs?

3

3.     The politics of COVID-19 and its surrounding mandates have led to a very dangerous, backwards situation. Pilots whose health is compromised because of coercion from the government and their employers are now afraid to come forward with chest pains and other indicators of conditions that will soon cause a mass casualty airline event. They are afraid to lose their jobs, but failing to come forward itself is a criminal act. At the same time, pilots whose health is perfect because they had the foresight to refuse the vaccine are daily harassed, intimidated and threatened with the loss of their careers. A comprehensive solution to this problem is desperately, and quickly, needed. It will require money, legislative action and cooperation among all the stakeholders in the aviation industry acting in good faith.

4.     For now, litigation to obtain justice for those who have been wronged (and hopefully to bring attention to a situation that is rapidly morphing into a national security issue), must suffice.

5.     The Plaintiffs in this lawsuit include pilots, flight attendants and other staff of Defendant Atlas Air, Inc. ("Atlas Air" or "Atlas")—the largest air cargo shipper in the world and the world's largest operator of Boeing 747 aircrafts, as well as certain of its affiliated entities. Throughout the global COVID-19 pandemic beginning in March 2020 and continuing to the present, Atlas Air has imposed relentless, ever-shifting pandemic mitigation restrictions on these Plaintiffs, including deceptive messaging which changed from month to month and kept plaintiffs in constant fear for their jobs.

6.     Atlas Air's COVID-19-related liberty infringements rose to a company-wide COVID-19 vaccine injection mandate announced the fall of 2021, in violation of United States law, prior promises, statements and hiring agreements including the Collective Bargaining Agreement ("Agreement") between Atlas and its employees.

4

7.      Coinciding with Atlas' unlawful vaccine mandate have been wholly arbitrary, retaliatory and punitive travel and work restrictions for Plaintiffs but not others, discriminatory policies, and pay differences among employees in violation of Atlas Air's labor agreements.

8.      The ultimate goal of these tactics – driven by an executive leadership team obsessed with doing the Biden Administration's bidding with respect to the COVID-19 vaccine mandate issue – has been to frighten plaintiffs and their co-workers into feeling they had no choice but to choose between a paycheck and having an experimental (and now proven to be extremely dangerous) drug injected into their bodies.

9.      Plaintiffs are largely unvaccinated[1] pilots, flight attendants and other Atlas or Atlas-affiliate staff who have suffered devastating financial, physical, psychological and other harm due to these violations, and who are now potentially subject to impending discharge and termination by Atlas and Atlas-affiliated entities following the recent imposition of the May 1, 2022 company mandate.  Many (and perhaps most or even all) of these Plaintiffs have provable natural immunity to the COVID-19 virus.  Many also have religious or medical exemptions from being injected with so-called COVID-19 "vaccines" – although it is currently unclear based on recent communications from Atlas and other Defendants whether they are actually still recognizing the religious or medical accommodations they have already granted these employees (purportedly because the accommodations already granted are somehow moot because enforcement of the federal-contractor mandate pursuant to which the accommodations were granted has been enjoined by multiple federal district courts).

10.     Perhaps most significantly, it is in contravention of long-standing FAA guidance for pilots to take medications that have not been approved by the FDA and then in use for twelve

---

[1] Some Plaintiffs may be partially vaccinated. Hereafter the Complaint will refer to all Plaintiffs with less-than-sufficient vaccination status (in the eyes of Defendants) as "unvaccinated."

months. The use of, or administration of a drug that does not meet these standards – such as the COVID-19 "vaccines" at issue in this case – is a blatant violation of long-standing FAA procedure. Yet Atlas has encouraged, coerced and even paid pilots to violate this FAA guidance and procedure. Further, Federal Aviation Regulation 61.53(a)(2) prohibits pilots who have taken a medication with side effects that would render them unable to meet the requirements of the FAA medical certificate from acting in any capacity as a member of a flight crew.

11.    Based upon recent revelations from documents released from the very pharmaceutical companies that produced the vaccines, as well as VAERS and D-MED data, it is clear the vaccines have numerous dangerous and detrimental side effects such as myocarditis, pericarditis, blood clots, strokes, and cardiac arrest, all of which can lead to sudden death. The vaccines can also lead to severe neurological conditions. This has created the classic example where a catastrophe is waiting to happen. It is simply not safe – and in fact is *illegal* under federal regulatory law – for vaccinated pilots to be flying right now. No better example of this is the near-disastrous situation that recently occurred on April 9, 2022, when the pilot of American Airlines Flight 1067 into Dallas Forth Worth – Rob Snow – had a cardiac event and flat-lined minutes after landing. A possible mass casualty event was barely avoided. There have now been multiple other similar incidents that have occurred around the country.

12.    This is entirely consistent with Atlas Air's pattern of conduct, specifically its CEO John Dietrich and Senior Vice President for Human Resources Patricia Goodwin-Peters. Their lust for power and money has led to – among other things – massive windfalls from American taxpayers during COVID-19 as well as a major and deadly aircraft disaster. For Atlas Air, COVID-19 and the government and corporate mandates that surround it have nothing to do with a virus, a vaccine or safety. They have only to do with power, politics and money.

13.     Although theoretically represented by the International Brotherhood of Teamsters Airline Division ("Teamsters" or "the Union"), Plaintiffs have been abandoned by the union in connection with the COVID-19 mandates and restrictions, because the union has opted to align itself politically with Atlas Air and the Biden administration instead of Atlas workers.

14.     Indeed, on March 30, 2022, the majority of Teamsters Local 2750 members present at their quarterly Executive Board Meeting and General Membership Meeting voted to have the Teamsters oppose Atlas Air's vaccine mandate. Yet soon after the resolution was passed, Teamsters Union officials unlawfully and unilaterally denounced the vote and announced the Teamsters would support Atlas Air's unlawful vaccine mandates.

15.     Thus, Plaintiffs are now forced to bring this action against Atlas Air and the other Defendants to enforce workers' rights and the Collective Bargaining Agreement without the help of the Teamsters.

16.     Plaintiffs will show at trial that the Teamsters has intentionally abandoned Plaintiffs so that Atlas Air will fire Plaintiffs and other Teamsters members will obtain boosts in their seniority and pay.

17.     The so-called vaccines mandated by Atlas Air (1) do not provide immunity from COVID-19, (2) have waning effectiveness, (3) and pose significant risks to those who take them, in violation of the Collective Bargaining Agreement and other law.

18.     Plaintiffs seek to recover all damages relating to Atlas Air's and other Defendants' vaccine mandate and related misconduct (and associated coercive mandates, including weekly testing and constant masking).

19.     Plaintiffs also seek to enjoin Defendants from ever enforcing their unlawful COVID-19 vaccine mandate, or from firing, terminating, punishing, retaliating or otherwise further harming Plaintiffs for not being vaccinated.

20.     **Plaintiff US Freedom Flyers** ("USFF") is an unincorporated association formed with a mission to promote informed consent and defend individual medical freedom through preserving citizens' rights to work and travel without governmental and corporate obstruction. It furthers its vision of protecting medical freedom by engaging, informing, defending, and mobilizing to preserve statutory, common law and Constitutionally-protected rights. Many of its members are airline employees, including pilots, flight attendants, mechanics, ramp agents, customer service agents and others who have been wronged by the type of vaccine mandate at issue in this case. Other Plaintiffs in this action are members of USFF.

21.     **Plaintiff Lane Caviness** is an individual and employee of Atlas. He is an Atlas pilot who resides in the state of Florida.

22.     **Plaintiff Patrick Akerlund** is an individual and employee of Atlas.

23.     **Plaintiff Michael Alzati** is an individual and employee of Atlas. He resides in the state of Florida.

24.     **Plaintiff Eric W. Anderson** is an individual and employee of Atlas.

25.     **Plaintiff Michael G. Ballard Jr.** is an individual and employee of Atlas.

26.     **Plaintiff Brian Baranek** is an individual and employee of Atlas.

27.     **Plaintiff Matthew Barber** is an individual and employee of Atlas.

28. **Plaintiff Cindy Barrionuevo** is an individual and employee of FSI.

29. **Plaintiff Kyle Bauder** is an individual and employee of Atlas.

30. **Plaintiff Larry James Bearce, Jr.** is an individual and employee of Atlas.

31. **Plaintiff Robert Bellman** is an individual and employee of Atlas. He resides in the state of Florida.

32. **Plaintiff Benjamin Bendiburg** is an individual and employee of Atlas.

33. **Plaintiff Douglas Berry** is an individual and employee of Atlas.

34. **Plaintiff Gregory Berry** is an individual and employee of Atlas.

35. **Plaintiff Douglas Bohnert** is an individual and employee of Atlas.

36. **Plaintiff Lynette Botha** is an individual and employee of Atlas.

37. **Plaintiff Ashley Brown** is an individual and employee of FSI.

38. **Plaintiff Caleb Buehrer** is an individual and employee of Atlas. He resides in the state of Florida.

39. **Plaintiff Richard Bullock** is an individual and employee of Atlas. He resides in the state of Florida.

40. **Plaintiff Jeffrey Campbell** is an individual and employee of Atlas.

41. **Plaintiff Jon Carroll** is an individual and employee of Atlas.

42. **Plaintiff Vergil Caskey** is an individual and employee of Atlas.

43. **Plaintiff James Castor** is an individual and employee of Atlas.

44. **Plaintiff Brett L. Chapman** is an individual and employee of Atlas.

45. **Plaintiff Nathan Charboneau** is an individual and employee of Atlas.

46. **Plaintiff Jared Childs** is an individual and employee of Atlas.

47. **Plaintiff Ryan Christopher** is an individual and employee of Atlas.

48.     **Plaintiff Shawn Churchel** is an individual and employee of Atlas. He resides in the state of Florida.

49.     **Plaintiff Joel Colon** is an individual and employee of Atlas. He resides in the state of Florida.

50.     **Plaintiff Mark Connor** is an individual and employee of Atlas.

51.     **Plaintiff Michael Corrigan** is an individual and employee of Atlas. He resides in the state of Florida.

52.     **Plaintiff Matthew Cronauer** is an individual and employee of Atlas.

53.     **Plaintiff Fred Cunningham** is an individual and employee of Atlas.

54.     **Plaintiff Royal Danza** is an individual and employee of Atlas.

55.     **Plaintiff Todd Davis** is an individual and employee of Atlas.

56.     **Plaintiff Wilbert De Moya** is an individual and employee of Atlas.

57.     **Plaintiff Elliot De Sousa** is an individual and employee of Atlas.

58.     **Plaintiff Bryan DeBoer** is an individual and employee of Atlas.

59.     **Plaintiff Eric Desandro** is an individual and employee of Atlas. He resides in the state of Florida.

60.     **Plaintiff Steve Dixon** is an individual and employee of Atlas.

61.     **Plaintiff Caleb Elliot** is an individual and employee of Atlas.

62.     **Plaintiff James Erickson** is an individual and employee of Atlas.

63.     **Plaintiff Luis Esquivia** is an individual and employee of Atlas. He resides in the state of Florida.

64.     **Plaintiff Lee Estes** is an individual and employee of Atlas.

65.     **Plaintiff Robert Fratti** is an individual and employee of Atlas.

66.     **Plaintiff Robert Freeman** is an individual and employee of FSI.

67.     **Plaintiff Ronald Fry** is an individual and employee of Atlas.

68.     **Plaintiff Timothy Frye** is an individual and employee of Atlas. He resides in the state of Florida.

69.     **Plaintiff Jonathan Fussle** is an individual and employee of Atlas.

70.     **Plaintiff Tony Gamboa** is an individual and employee of Atlas. He resides in the state of Florida.

71.     **Plaintiff Stephen Gaston** is an individual and employee of Atlas. He resides in the state of Florida.

72.     **Plaintiff Dennis Gebhard** is an individual and employee of Atlas. He resides in the state of Florida.

73.     **Plaintiff Reza Ghods** is an individual and employee of Atlas. He resides in the state of Florida.

74.     **Plaintiff Robbie Gibbs** is an individual and employee of Atlas.

75.     **Plaintiff Mark Gilman** is an individual and employee of Atlas.

76.     **Plaintiff Robert Giudice** is an individual and employee of Atlas.

77.     **Plaintiff Eric Gordon** is an individual and employee of Atlas.

78.     **Plaintiff Daniel Greer** is an individual and employee of Atlas.

79.     **Plaintiff Rexford T. Heivilin** is an individual and employee of Atlas.

80.     **Plaintiff Jason Henning** is an individual and employee of Atlas.

81.     **Plaintiff Darrell Herring** is an individual and employee of Atlas.

82.     **Plaintiff David Hewson III** is an individual and employee of Atlas. He resides in the state of Florida.

83.    **Plaintiff Kristopher Hlebechuck** is an individual and employee of Atlas.

84.    **Plaintiff Todd Hontz** is an individual and employee of Atlas. He resides in the state of Florida.

85.    **Plaintiff Robert Hospers** is an individual and employee of Atlas.

86.    **Plaintiff Daniel Hudson** is an individual and employee of Atlas.

87.    **Plaintiff Bryce Huesman** is an individual and employee of Atlas. He resides in the state of Florida.

88.    **Plaintiff Christian Hutchcroft** is an individual and employee of Atlas. He resides in the state of Florida.

89.    **Plaintiff Jesse Johansen** is an individual and employee of Atlas.

90.    **Plaintiff Joshua Juillerat** is an individual and employee of Atlas.

91.    **Plaintiff Roger Justice** is an individual and employee of Atlas.

92.    **Plaintiff Venancio Kassandji** is an individual and employee of Atlas. He resides in the state of Florida.

93.    **Plaintiff John Kearins** is an individual and employee of Atlas.

94.    **Plaintiff David Keen** is an individual and employee of Atlas.

95.    **Plaintiff Beth Kirby** is an individual and employee of Atlas. She resides in the state of Florida.

96.    **Plaintiff Chad Kravetz** is an individual and employee of Atlas. He resides in the state of Florida.

97.    **Plaintiff Ivey Leach** is an individual and employee of FSI.

98.    **Plaintiff Daniel Lee** is an individual and employee of Atlas.

99.    **Plaintiff Joseph Loschiavo** is an individual and employee of Atlas.

100.    **Plaintiff Elizabeth Lozano** is an individual and employee of FSI.

101.    **Plaintiff Andrew Lutz** is an individual and employee of Atlas. He resides in the state of Florida.

102.    **Plaintiff Blythe Lutz** is an individual and employee of Atlas. She resides in the state of Florida.

103.    **Plaintiff Rafael Macario** is an individual and employee of Atlas. He resides in the state of Florida.

104.    **Plaintiff Mario Manzano** is an individual and employee of Atlas. He resides in the state of Florida.

105.    **Plaintiff Douglas P. Mayo Jr.** is an individual and employee of Atlas. He resides in the state of Florida.

106.    **Plaintiff William K. McLaughlin** is an individual and employee of Atlas.

107.    **Plaintiff Nicholas Meikle** is an individual and employee of Atlas. He resides in the state of Florida.

108.    **Plaintiff Steven Meissner** is an individual and employee of Atlas. He resides in the state of Florida.

109.    **Plaintiff Jeffrey Michonski** is an individual and employee of Atlas.

110.    **Plaintiff Andrew Mickler** is an individual and employee of Atlas.

111.    **Plaintiff Davin Miles** is an individual and employee of Atlas.

112.    **Plaintiff Corey Morris** is an individual and employee of Atlas. He resides in the state of Florida.

113.    **Plaintiff Steven Muratore** is an individual and employee of Atlas. He resides in the state of Florida.

114. **Plaintiff Gregory Myers** is an individual and employee of Atlas.

115. **Plaintiff Shawn Myers** is an individual and employee of Atlas.

116. **Plaintiff Peter Napora** is an individual and employee of Atlas.

117. **Plaintiff Haley Owens** is an individual and employee of FSI.

118. **Plaintiff Joel Pardo** is an individual and employee of Atlas.

119. **Plaintiff Malaney Peete** is an individual and employee of FSI.

120. **Plaintiff Lance Phillips** is an individual and employee of Atlas.

121. **Plaintiff Patrick Phillips** is an individual and employee of Atlas.

122. **Plaintiff Bradley Pierson** is an individual and employee of Atlas.

123. **Plaintiff Siegfried Pittet** is an individual and employee of Atlas.

124. **Plaintiff Glen Pronk** is an individual and employee of Atlas.

125. **Plaintiff Charles Randall** is an individual and employee of Atlas.

126. **Plaintiff Peter Raymond** is an individual and employee of Atlas.

127. **Plaintiff Sarah Riewer** is an individual and employee of Atlas.

128. **Plaintiff Nicholas Ripi** is an individual and employee of Atlas.

129. **Plaintiff Joshua Roberts** is an individual and employee of Atlas.

130. **Plaintiff Rebecca Robertson** is an individual and employee of FSI.

131. **Plaintiff Robert Robertson** is an individual and employee of Atlas. He resides in the state of Florida.

132. **Plaintiff John Rodway** is an individual and employee of Atlas.

133. **Plaintiff Jason Rogers** is an individual and employee of Atlas.

134. **Plaintiff David Romig** is an individual and employee of Atlas.

135. **Plaintiff Christopher Russo** is an individual and employee of Atlas.

136. **Plaintiff Steve Russo** is an individual and employee of Atlas. He resides in the state of Florida.

137. **Plaintiff Gregory Samson** is an individual and employee of Atlas.

138. **Plaintiff Kimberly Schreck** is an individual and employee of Atlas.

139. **Plaintiff Gabriel Schwartz** is an individual and employee of Atlas. He resides in the state of Florida.

140. **Plaintiff John Scott** is an individual and employee of Atlas. He resides in the state of Florida.

141. **Plaintiff William Serritella** is an individual and employee of Atlas. He resides in the state of Florida.

142. **Plaintiff Gentry Shelton** is an individual and employee of Atlas.

143. **Plaintiff Todd Snaza** is an individual and employee of Atlas.

144. **Plaintiff Michael Sobczak** is an individual and employee of Atlas. He resides in the state of Florida.

145. **Plaintiff Donald Sorrentino** is an individual and employee of Atlas.

146. **Plaintiff Mark South** is an individual and employee of Atlas.

147. **Plaintiff Sharolyn Stanley** is an individual and employee of FSI. She resides in the state of Florida.

148. **Plaintiff Michael Stark** is an individual and employee of Atlas.

149. **Plaintiff Austin Staton** is an individual and employee of Atlas.

150. **Plaintiff Stephen Staton** is an individual and employee of Atlas.

151. **Plaintiff David Stillman** is an individual and employee of Atlas.

152. **Plaintiff Patrick Stone** is an individual and employee of Atlas.

153. **Plaintiff Elizabeth Stoneking** is an individual and employee of FSI.

154. **Plaintiff Forrest Stowells** is an individual and employee of Atlas.

155. **Plaintiff Neecie Surber** is an individual and employee of FSI.

156. **Plaintiff John Swift** is an individual and employee of Atlas.

157. **Plaintiff Michelle Tate** is an individual and employee of FSI.

158. **Plaintiff Todd Talikka** is an individual and employee of Atlas.

159. **Plaintiff Lauren Taylor** is an individual and employee of Atlas.

160. **Plaintiff Nick Taylor** is an individual and employee of Atlas.

161. **Plaintiff Mark Thien** is an individual and mechanic contracted to Atlas from Encompass Air LLC.

162. **Plaintiff William Thompson** is an individual and employee of Atlas. He resides in the state of Florida.

163. **Plaintiff Brandon Thoroughman** is an individual and employee of Atlas.

164. **Plaintiff Geri Tonda** is an individual and employee of FSI.

165. **Plaintiff Ricardo Torres Abarca** is an individual and employee of FSI.

166. **Plaintiff Sergey Usovich** is an individual and employee of Atlas.

167. **Plaintiff Gustavo Verdes** is an individual and employee of Atlas.

168. **Plaintiff James Villella** is an individual and employee of Atlas. He resides in the state of Florida.

169. **Plaintiff Joshua West** is an individual and employee of Atlas.

170. **Plaintiff Matthew Wieder** is an individual and employee of Atlas.

171. **Plaintiff Bart Williams** is an individual and employee of Atlas.

172. **Plaintiff Sean Wolf** is an individual and employee of Atlas.

173.    **Plaintiff Farshad Zarrabian** is an individual and employee of Atlas. He resides in the state of Florida.

174.    **Defendant Atlas Air, Inc.** is a Delaware corporation with its principal place of business in Purchase, New York. It is a wholly owned subsidiary of Atlas Air Worldwide Holdings, is a cargo airline, passenger charter airline, and aircraft lessor.

175.    Atlas Air has a massive presence in Florida, and specifically in this judicial district, with a hub, its training center and other operations. Its training center is located at 5600 NW 36th St., Miami, FL 33166. It consists of 30,000 square feet of administrative and instructional space, including the operation of six flight simulation training devices. It "provides a wide range of advanced training solutions, specializing in aircrew training for wide body B747 and B767s." It teaches "more than 10,000 pilots, flight engineers, flight attendants, and other aviation professionals each year."

176.    **Defendant Flight Services International, LLC** is a Texas limited liability company with its principal place of business in Houston, Texas. It is a company whose exclusive business is to contract flight attendants to Atlas Air. All the flight attendants who are staffed on Atlas Air flights are contracted through FSI. FSI was founded by an Atlas contract attorney and his spouse. All its employees receive all their training at the Atlas training facility in Miami. FSI contracts its flight attendants to Atlas Air and receives millions in dollars from Atlas Air in return.

177.    **Defendant EncompassAir, LLC** is an Alaska limited liability company with its principal place of business in Anchorage, Alaska. It is a company whose business is to contract mechanics to Atlas Air and other airlines.

178.     **Defendant John W. Dietrich** is an individual and is President and Chief Executive Officer for Atlas Air, and is a Board Member of Atlas Air. He keeps an executive office in Miami, FL.

179.     **Defendant Jeffrey Carlson** is an individual and is Senior Vice President for Flight Operations for Atlas Air. He keeps an executive office in Miami, FL.

180.     **Defendant Patricia Goodwin-Peters** is an individual and Senior Vice President for Human Resources for Atlas Air. She keeps an executive office in Miami, FL.

## JURISDICTION AND VENUE

181.     This Court has subject matter jurisdiction over this case under 28 U.S. Code § 1331 because the case arises under the Constitution, laws, or treaties of the United States.

182.     This Court has personal jurisdiction over defendants because under *International Shoe* and its progeny, they have at least minimum contacts with Florida such that traditional notions of fair play and substantial justice would not be offended by the exercise of jurisdiction. In addition, personal jurisdiction is appropriate under Florida's long-arm statute, 48.193. Atlas, its affiliated companies, and Atlas executives engaged in unlawful acts regarding the COVID-19 vaccine mandates through acts within the state of Florida as well as acts outside the state of Florida that caused harm to numerous plaintiffs in the state of Florida.

183.     Venue is proper in the U.S. Southern District of Florida because Atlas Air and its affiliates, and leadership do a high percentage of their business and stage a high percentage of their flights in and around southern Florida and the Miami International Airport. In addition, the 30,000 square foot Atlas Training Center that trains 10,000 people per year is located in this judicial district.

## **FACTUAL ALLEGATIONS**

184.    By mid-March 2020, COVID-19 had been declared a pandemic. The subsequent lockdowns and other draconian measures taken by governments and large corporations wreaked havoc on the global economy and tore at the societal fabric.

185.    News of the COVID-19 global pandemic spread through the air transportation industry like wildfire, beginning in January and February 2020. Plaintiffs heroically performed their duties throughout early 2020 while many people around the world were locked down or sheltered in their homes, and while many businesses and industries were shuttered. From the earliest days of the pandemic, many Atlas pilots and crewmembers contracted the COVID-19 virus and recovered. Thus, many or most of the Plaintiffs in this lawsuit have developed natural immunity throughout the history of the pandemic.

186.    Beginning around December 2020, it was announced that there had been three mRNA "vaccines" purportedly developed for COVID-19: Pfizer, Moderna and Johnson & Johnson. These did not go through any standard form of lengthy, multi-phase clinical trials or normal CDC or FDA approval. Rather, they were rushed through pursuant to Emergency Use Authorizations ("EUAs") and then an extremely abbreviated FDA "approval" process.

187.    Initially, it was widely claimed that these vaccines prevented infection and transmission of the COVID-19 virus; but soon it became obvious that these vaccines were not vaccines in the classic dictionary sense. Rather these "vaccines" were mere gene therapy treatments and did not provide any immunity, only reduced severity of symptoms, for those who took them. This distinction is important; it means that any alleged benefits of taking the shots were merely for the individual recipient and provided no protection for others.

188.    Tens of millions of Americans, including Plaintiffs, questioned this process and were adamantly opposed to taking these vaccines due to this questionable process as well as religious, medical or other reasons.

189.    Those who chose to not take a COVID-19 vaccine were prescient. These vaccines have turned out to be ineffective, dangerous and, in some cases, deadly, as shown both anecdotally and through the Vaccine Adverse Effects Reporting System ("VAERS") and DOD DMED database.

190.    Perhaps most significantly, per long-standing FAA guidance, Plaintiffs were prohibited from taking experimental medications prior to 12 months post-FDA approval. Federal Aviation Regulation 61.53(a)(2) prohibits pilots who have taken a medication with side effects that would render them unable to meet the requirements of the FAA medical certificate from acting in any capacity as a member of a flight crew. Atlas encouraged, coerced and even paid pilots to violate these long-standing federal regulations, yet the ones who refused to comply were the ones punished as set forth below.

191.    Atlas Air has the largest wide-body fleet of aircraft in the world. Atlas Air holds the world's largest 747 fleet of aircraft in the world.

192.    Atlas Air is the largest customer of the Department of Defense ("DOD") Air Mobility Command ("AMC"). Atlas carries more U.S. troops and military material than any other airline in the world.

193.    Atlas Air receives many millions of dollars from the DOD and AMC.

194.    Atlas flies more revenue freight ton miles internationally than UPS or FedEx. In this respect it is the largest air freight carrier in the world.

20

195.    Atlas Air is a behemoth in the air cargo and VIP charter industry, yet its executives relish the anonymity and relative invisibility they have enjoyed up to this time.

196.    Atlas Air intentionally negotiated in bad faith with its pilot group, avoiding renewing their pilot contract from 2016 to 2021, enabling the executives to keep hundreds of millions of dollars. This made Atlas Air management the highest compensated aviation executives in the world while at the same time keeping their pilot group the lowest paid in the industry for that entire time.

197.    In 2020, Atlas Air made eight times the net profit they made from the previous record year in 2019. During this time, CEO John Dietrich applied for and successfully lobbied and received $407,000,000 in COVID-19 bailout monies from American taxpayers.

198.    Atlas Air agreed to pay $100,000,000 to settle an international cargo price fixing scheme to avoid going to trial. They finished paying off the $100,000,000 in 2020, the same year they received the $407,000,000 in taxpayer bailout cash from the government.

199.    Patricia Goodwin-Peters joined Atlas Air as Senior Vice President of Human Resources after leaving Kate Spade, having a background in women's fashion. She had zero experience in aviation. Despite this fact, she immediately began overseeing the training and hiring standards of the pilots of Atlas Air.

200.    Scott Anderson, who was the Senior Director of Flight Proficiency, Training, and Standards at Atlas Air was ultimately fired by Goodwin-Peters.

201.    Anderson was a graduate of the United States Naval Academy, retired Naval Aviator, Blue Angels Pilot, and former Delta Airlines 747-400 Captain, 767 Captain, and FAA Designated Examiner (APD). Captain Anderson was also a Check Airman for Delta on both the 747 and 767.

202.    Due to the deteriorating and toxic conditions within the operation, Atlas Air was losing pilots faster than they could be replaced. Goodwin-Peters pressured Anderson to replace these very experienced and seasoned pilots with pilots fresh out of flight school and with very little experience. Anderson explained to Patricia Goodwin-Peters that these very low-hour pilots did not have the experience or proficiency to pilot large, widebody aircraft safely across oceans and continents.

203.    Anderson informed Goodwin-Peters that although he could legally hire them, they were not competent to safely operate these large aircraft in complex conditions around the world. Goodwin-Peters insisted that Anderson hire these inexperienced pilots despite that they were not competent for these missions. Anderson refused and was fired by Goodwin-Peters.

204.    On February 23, 2019 Atlas Air Flight 3591 being operated for Prime Air crashed into Trinity Bay outside of Houston, Texas killing all three aboard. Both pilots operating the flight had multiple failures during training at Atlas Air. The First Officer had many demonstrated failures at prior airlines, yet knowing this, Atlas hired him anyway.

205.    In a 2020 United States Senate Safety Oversight report, the FAA Inspector assigned to Atlas Air's training standards stated that Atlas Air violated FAA regulatory compliance for a decade and called Atlas' operations the worst he had ever seen for any certificate holder under the Certificate Holder Evaluation Process ("CHEP"). He was reassigned to regulate another airline after refusing to accept the constant violations by Atlas Air. In his opinion, he was being retaliated against by the FAA due to its cozy relationship with Atlas Air.

206.    At or about the beginning of September 2021, Goodwin-Peters sent a message to all Atlas employees (following up on a message sent by Dietrich) and announced all employees would be required to be "fully vaccinated" with a COVID-19 vaccine pursuant to the Biden

Administration's mandate regarding federally-contracted employees by December 8, 2021. She also announced that employees were required to report their vaccination status to the company. According to the notice, "per the Centers for Disease Control and Prevention (CDC), people are considered <u>fully vaccinated</u> two weeks after their second dose of the Pfizer-BioNTech or Moderna COVID-19 vaccines, or two weeks after the single-dose Johnson & Johnson's Janssen COVID-19 vaccine." (Emphasis in original)

207.    Goodwin-Peters' announcement of the vaccine mandate policy demonstrated Atlas' disingenuousness from the beginning. Atlas purported to stand for personal choice regarding COVID-19 vaccines: "As a Company, we support the views of health experts that vaccines reduce the impact and spread of COVID-19. That said, we have been consistent in our position that vaccination is a personal choice and we were not planning to mandate vaccines for our employees. However, we are now required to comply with this Executive Order." As set forth below, after the Biden Administration's mandate was enjoined by various federal courts around the country, Atlas immediately reverted to a company-directed mandate.

208.    Atlas directed that Friday, October 22, 2021 was the deadline "for crewmember[s] to request an exemption due to medical or religious reasons."

209.    Atlas directed that Wednesday, October 27, 2021 was the deadline for crewmembers to receive their "first vaccine if electing to receive the Pfizer BioNTech or Moderna vaccine that requires two shots."

210.    Atlas directed that Wednesday, November 24, 2021 was the deadline for crewmembers to "receive [their] vaccine if electing to receive the Johnson & Johnson's Janssen vaccine that requires one shot."

211.   Atlas directed that Wednesday, November 24, 2021 was the deadline for crewmembers to "receive [their] second vaccine if electing to receive the Pfizer BioNTech or Moderna vaccine that requires two shots."

212.   Atlas directed that Thursday, November 25, 2021 was the deadline for crewmembers to "report [their] vaccination status to the Company."

213.   FSI, whose sole business and source of revenue was to contract flight attendants to Atlas, quickly followed suit in multiple communications. On September 4, 2021, FSI President Joni French sent an e-mail to employees that made brazenly explicit the discrimination in work conditions and compensation faced by those who were choosing to not take the experimental and dangerous vaccine, falsely stating that it was about "health and safety." She wrote:

> The health and safety of all our Cabin Crewmembers remains a top priority for FSI. To support your well-being, as well as that of your work colleagues, we encourage everyone to pursue the COVID-19 vaccine. Cabin Crewmembers who have proof of vaccination will increasingly be able to operate with more flexibility under less restrictive quarantine rules.
>
> We are pleased to let you know that we will now provide 5 hours of additional compensation to every FSI Flight Attendant who receives their COVID-19 vaccine and submits a copy of their vaccination card.

Thus, those who gave into the pressure to take the vaccine would "be able to operate with more flexibility under less restrictive quarantine rules" and would receive more compensation than those who did not.

214.   Numerous Plaintiffs applied for and received a medical or religious accommodation with respect to the mandate. Some did not, yet remained adamantly opposed to taking what they considered to be an experimental and dangerous vaccine.

215. Prior to the December 8, 2021 federal contractor vaccine mandate going into effect, the mandate was enjoined by a federal district court in Kentucky. Several other federal district courts throughout the country issued similar injunctions throughout December and January 2022.

216. On or about January 13, 2022, The Supreme Court of the United States blocked the OSHA mandate requiring businesses with over 100 employees to impose vaccine and testing requirements.

217. On or about January 25, 2022, in light of the Supreme Court's ruling, OSHA announced it was withdrawing its vaccine and testing requirements that were at issue. However, President Biden called upon businesses to voluntarily impose the mandates themselves.

218. Because Atlas and the other Defendants no longer had the cover of a federal contractor vaccine mandate or OSHA requirement – and despite their previous statements that they believed in personal choice when it came to COVID-19 vaccine mandate issues and were only reluctantly following federal law – Atlas Air immediately and dutifully obeyed the word of the Biden Administration and announced it would do the President's bidding.

219. On January 25, 2022, Goodwin-Peters sent out a communication stating:

> Earlier today, you received notice that all U.S. employees who must travel as an essential function of their position must be fully vaccinated by May 1, 2022. *This policy applies to you.* We recognize that you previously sought an accommodation from the COVID-19 vaccine mandates the company previously implemented to comply with Executive Order 14042 (applicable to federal contractors) and OSHA's Emergency Temporary Standard (applicable to employers with more than 100 employees).

(Emphasis added).

220. Goodwin-Peters in the same communication indicated that employees would not be required to submit new medical or religious accommodation requests – rather that ones they previously submitted would be processed:

> Given your requests for accommodation from the Company's previous COVID-19 vaccination mandates, the Company is assuming you are seeking a request for accommodation from the vaccine policy that will take effect May 1, unless you respond to this email and indicate otherwise by Friday, January 28, 2022. If you do not respond by January 28, the Company will process your new request for accommodation based on the information already in its possession and follow-up with you thereafter to identify any reasonable accommodations the Company can offer without undue hardship.

So Atlas employees who were unvaccinated were left in a continued state of legal, emotional and career limbo. Those who had submitted a prior request for medical or religious accommodation were hopeful that it would be granted again, and those who did not or were not seeking such an accommodation yet chose not to take the vaccine were facing termination by May 1, 2022.

221.    All unvaccinated employees remained subject to the same harassment, disparate treatment and fear of losing their jobs that they had been under for months.

222.    During the years of 2020, 2021 and 2022 Atlas Air coerced, intimidated, harassed and harangued its employees into complying with various COVID-19 related rules, including mask and then vaccine requirements, at the same time violating both the religious and medical rights of those same employees. Atlas continually demanded they submit to an experimental medical procedure regardless of their medical conditions or religious beliefs.

223.    During this time, Atlas Pilots, flight attendants, mechanics, load masters, general employees, and even some members of management endured an extremely hostile and toxic work environment. One pilot particularly obsessed with the issue would compare unvaccinated employees to January 6th protestors (believing it was some kind of insult apparently). CEO Dietrich also felt compelled to weigh in on the events of January 6th with some "personal thoughts" on January 7th.

224.    Often employees were interrogated before beginning their shifts or flight assignments with demands for answers to questions of personal and protected medical and religious information. Atlas employees were leaking passwords to databases containing this legally protected information, and that information was then disseminated to their coworkers who often berated and attacked them for not being "vaccinated."

225.    "Vaccinated" crew members were demanding "unvaccinated" coworkers work the entire flight with a facial covering while the "vaccinated" remained uncovered.

226.    Atlas Air, Inc. CEO John Dietrich openly encouraged this behavior by making written and oral statements that "vaccinated" crews felt unsafe with "unvaccinated" crews and intimated that this was an unfair situation for the "vaccinated" crews.

227.    Both Dietrich and Goodwin-Peters made repeated statements that if air crews expected to have a future at Atlas Air, they would have no choice other than to be "vaccinated." Both Dietrich and Goodwin-Peters also stated that religious and medical exemptions to being "vaccinated" would not be accepted and that "unvaccinated" crews would be placed on unpaid leave or terminated with ever-changing and lengthening deadlines in an attempt to intimidate and coerce vaccination against a minority of employees whose religious convictions and personal medical conditions precluded these procedures.

228.    On March 8, 2022, after the January 25, 2022 Goodwin-Peters communication, things got worse for the Plaintiff flight attendants who worked for FSI.

229.    They received a communication from FSI President Joni French stating that if they were not vaccinated by May 1, 2022, they would be placed on an unpaid leave of absence regardless of the fact they had previously requested an accommodation:

> Atlas Air, Inc. has advised FSI that **all** FSI employees who work on
> Atlas flights must be fully-vaccinated by May 1, 2022.  (Obviously,

Atlas is entitled to determine the terms under which FSI's flight attendants are eligible to work on Atlas flights.)

We recognize that you previously requested an accommodation (exemption) from the COVID-19 vaccine mandates the Company implemented to comply with Executive Order 14042 (applicable to federal contractors) and OSHA's Emergency Temporary Standard (applicable to employers with more than 100 employees). Atlas is experiencing increasing global regulations and COVID-19 vaccine mandates, including significant travel restrictions such as limited access to critical hotels/restaurants that are used by its flight crews during travel. **Given this highly-restrictive environment, Atlas has revised its vaccine policy for the ongoing safety, compliance and viability of its operations as well as to protect its employees, customers and members of the public.**

Unfortunately, if you are unable or unwilling to obtain COVID-19 vaccinations, you will not be eligible to work on Atlas Air flights. In that event, FSI has no other work, including flights for its flight attendants to crew. If we do not receive evidence that you have been fully vaccinated by April 30, 2022, you will be placed on an unpaid leave of absence (LOA).

(Emphasis in original).

230.    At various times, Atlas and the other Defendants ordered that unvaccinated employees be tested weekly. Yet despite language in the Collective Bargaining Agreement indicating vaccines and testing is to be provided at no cost, Plaintiffs have been expected to pay for the mandatory testing at their own expense.

231.    Some Plaintiffs took the vaccine, upon Defendants' repeated deception and coercion, without informed consent.

232.    At no time during the period covered by this complaint did Atlas or the other defendants provide the full complete inserts regarding the vaccines to Atlas employees who took the injections.

233.    At no time during the period covered by this complaint did Atlas or the other defendants inform those who took the injections, or any employees, of reports of vaccine injuries as reported in the VAERS database.

234.    Some plaintiffs and employees became vaccinated only to be told later that to be allowed to fly into Germany, it was mandatory to get "booster" shots for those crewmembers that received the one-shot Johnson & Johnson vaccine.

235.    On or about March 23, 2022, with the politics of COVID-19 and vaccine mandates having changed dramatically in the preceding weeks (and with word spreading that undersigned counsel would be representing Plaintiffs), Atlas suddenly changed its tune. In the course of these shifting pronouncements, the hypocrisy of Atlas' and other Defendants' actions has been nothing less than stunning, and these moves have been a day late and a dollar short.

236.    First, despite terrorizing plaintiffs over COVID-19 restrictions from the onset of COVID-19 to the present day, as the global politics of the COVID-19 mandate issues began to change, Dietrich was actually among a group of major airline CEOs who signed a letter to President Biden on March 23, 2022, requesting that he lift various COVID-19 restrictions. In the letter, the CEOs write:

> Given that we have entered a different phase of dealing with this virus, we strongly support your view that "COVID-19 need no longer control our lives." **Now is the time for the Administration to sunset federal transportation travel restrictions – including the international predeparture testing requirement and the federal mask mandate – that are no longer aligned with the realities of the current epidemiological environment.**

(Emphasis in original). Despite this public posturing, Atlas still enforces company-wide COVID-19 restrictions that are harassing, discriminatory and are meant as retaliation against those who have stood up to Atlas' leadership and other Defendants' tyrannical conduct.

237.    Then, on March 25, 2022, the company attempted to mollify Plaintiffs by purporting to assure them that – despite maintaining a private company-wide vaccine mandate – those who had previously obtained a religious or medical exemption pursuant to the federal contractor mandate would purportedly be allowed to fly after the May 1, 2022 company vaccine mandate deadline "so long as they undergo requisite COVID-19 testing at their expense."

238.    The communication Atlas sent to its employees made clear that Atlas has not changed its policy of discriminating against those who have chosen to not be vaccinated for religious or other personal reasons of informed consent or bodily autonomy. Specifically, Goodwin-Peters made clear that Atlas believes its prior actions in discriminating against the unvaccinated was justified, and that Atlas could revise its policy at any time in the future (to, for example, fire unvaccinated employees or place them on unpaid leave or re-assign them). Specifically, for example, Goodwin-Peters stated:

> As a reminder, employees who travel as an essential function of their position must be vaccinated by May 1 pursuant to the Company's Policy.
>
> . . .
>
> Throughout the pandemic, we have closely monitored the state of the pandemic and changing regulations, both domestically and globally, and with your help, have adjusted our operations and policies to adapt to the evolving environment to protect our employees and our operations.
>
> *The Company maintains the right to revise this Policy as appropriate and at its sole discretion, including based on changing domestic and global regulations and the state of the pandemic.* We will continue to closely watch the global vaccination and testing requirements and metrics tied to the pandemic, and communicate any necessary changes to our policies as appropriate.

(Emphasis added).

239.     Thus, despite this move, Atlas employees were *still* faced with the prospect of working at a company that could pull the rug out from under their employment at any time because of their vaccination status.

240.     On March 31, 2022, Goodwin-Peters sent another e-mail underscoring the discrimination that would persist at Atlas Air. It mandated that unvaccinated employees with medical or religious accommodations would have to undergo testing at their own expense pursuant to a complicated process, as well as wear masks indoors despite the widespread knowledge that wearing paper masks over one's face has accomplished absolutely nothing with respect to transmission of COVID-19.

241.     Throughout this time period, Goodwin-Peters repeatedly sent e-mails to employees urging them to review and re-acknowledge the Atlas Air employee handbook.

242.     On April 21, 2022 there was even more confusion, whether intentional or otherwise. That day, Goodwin-Peters sent out an updated Atlas Air Worldwide COVID-19 Vaccination & Testing Policy, along with Atlas Air Worldwide COVID-19 Vaccine Policy: Frequently Asked Questions. A mere *ten days* before Atlas' May 1st vaccination mandate policy was to go into effect, these documents clearly purported to *reverse* the announcement on or around April 1st that those with religious and medical accommodations would be allowed to fly and otherwise remain gainfully employed. In addition to testing at employee expense, a further requirement was mandated that all COVID tests will be videotaped by the employee and retained to be given to Human Resources upon demand.

243.     The Policy stated that "Employees who travel as an essential function of their position must be fully vaccinated against COVID-19 by May 1, 2022." (Emphasis in original). It

then stated that "Employees not in compliance with this Policy may be subject to discipline, up to and including termination pursuant to applicable law." It further states that

> Essential-travel employees who do not choose to be vaccinated, and who are not in compliance with the Policy as of the effective date of May 1, 2022, may not be permitted to continue traveling and may be placed in an alternate position or subject to an unpaid leave status.

244.     Further, the FAQ document made unequivocally clear that the prior medical and religious accommodations obtained by employees – which Atlas and other Defendants indicated on January 25, 2022 would be applicable going forward – would *no longer be recognized*:

> If you were previously granted an accommodation from a Company policy or practice designed to comply with the federal Executive Order mandating vaccination, *your accommodation is no longer effective*. The Executive Order has been stayed by a federal court and is not applicable to us at this time, so there is no longer any Company policy or practice being implemented to comply with the Executive Order from which an accommodation is necessary.

> At this time, the Company anticipates *it will be unable to permit unvaccinated employees to perform travel duties after May 1* without jeopardizing business continuity and/or incurring substantial administrative and other costs. The Company is experiencing ever-increasing global regulations and vaccine mandates related to COVID-19, including travel restrictions as well as limited access to critical hotels/restaurants that are used by employees during travel. The Company is reviewing what if any reasonable accommodations it may be able to provide to unvaccinated employees who are eligible for an accommodation after May 1, *including unpaid leave and reassignment*.

(Emphasis added).

245.     This was directly contrary to prior company guidance. It created such an instantaneous uproar that the company was forced to retract it the very next day on April 22, 2022:

> It has been brought to our attention that employees have inadvertently been directed to an out-of-date Vaccination & Testing Policy and related FAQs, which contained information that is no longer accurate. In particular, **if you have previously been granted a religious or medical accommodation to the vaccination policy,**

**your exemption is still in effect**. Beginning May 1, you will be required to test as set forth in the Policy and FAQs. Please see below for the correct links.

(Emphasis in original).

246.     To add insult to injury, while the entire world (including the federal government thanks only to a federal district judge's recent decision in Florida) is taking off their useless masks on airplanes, in airports and otherwise, President Joni French of FSI is insisting that everyone continue to wear a mask on Atlas flights. This was announced on April 19, 2022, leading one Atlas flight attendant to marvel at the fact that the first time in 9 months American soldiers deployed to the most dangerous places in the world were required to wear a paper mask over their faces is when they boarded an Atlas Air flight.

247.     Throughout the entire course of the foregoing events, EncompassAir followed the lead of Atlas Air and mirrored Atlas policies and conduct with respect COVID-19 related mandates for its employees who were contracted to Atlas.

248.     Throughout the pandemic, executives at Atlas urged Atlas employees including Plaintiffs, to get injected with the vaccines, while simultaneously insisting that the company would never support a vaccination mandate.  The Teamsters Union signed an agreement with the company that the Union would help the company push and promote vaccination among Atlas employees. The Teamsters and Teamsters Local 2750 even agreed to roll out a program in violation of the Collective Bargaining Agreement which allowed vaccinated employees to receive a bonus, and thus higher pay than unvaccinated employees.

249.     Local 2750 and the Teamsters were overwhelmingly led and directed by partisan Democrats and loyalists of U.S. President Biden.  And, as elsewhere, the vaccine rollout within Atlas became tinged with political animosity.  Upon information and belief, the Teamsters and

Local 2750 *have never once voiced any criticism* of Atlas' vaccination push to the company, despite knowing that many Atlas employees did not wish to become vaccinated, were religiously or medically exempt, or naturally immune.

250.    Throughout the spring, summer and fall of 2021, all the parties, including Teamsters Local 2750 and the International Brotherhood of Teamsters Airline Division negotiated a new Collective Bargaining Agreement.  These negotiations occurred *during, and in the midst of the global COVID-19 panic and pandemic and while COVID-19 and discussions about COVID-19 mitigation strategies including vaccines and ideas about vaccine mandates were in the international news every single day*. Concerns about the vaccines, and about whether vaccines would be mandated, were high in the thoughts of every Atlas Air pilot, flight attendant and employee, as well as among Atlas Air executives and executives and officers of the Teamsters and Teamsters Local 2750.

251.    Throughout this period of contract negotiation, Atlas Air and its defendant executives repeatedly assured concerned employees, including all Plaintiffs, that the company would not be mandating the COVID vaccines (which were available throughout 2021).

252.    On **September 10, 2021**, the Collective Bargaining Agreement (the "Agreement") was signed and executed by Atlas, the Teamsters, and flight deck crew members.  The final agreement plainly gave the company no authority whatsoever to impose vaccination mandates upon Atlas employees (or any other invasions of workers' medical autonomy). The only section specifically addressing vaccinations was Article 27F, which provides: "The Company shall provide, at no cost to Crew Members, an immunization plan that includes, at a minimum, the following vaccinations . . . (Yellow fever, Hepatitis, Typhoid, Tetanus, etc.)."

253.     Art. 27F(10) of the agreement provides that the Company shall provide, at no cost, "Any other immunizations recommended by the current United States Center for Disease Control 'Advice for International Travel' document." The plain language of 27F(10) gives no authority for Atlas Air to mandate such immunizations. The referenced "Advice for International Travel" document of the CDC appears to be several documents and/or web pages, none of which mandate COVID-19 vaccinations for U.S. Citizens. Indeed, the CDC's published instructions (https://www.cdc.gov/coronavirus/2019-ncov/travelers/proof-of-vaccination.html) contains a section dedicated to airline crew members. The Technical Instructions applicable to crew members plainly do not mandate airline pilots or crew members to be injected with COVID-19 vaccine treatments.       https://www.cdc.gov/quarantine/order-safe-travel/technical-instructions.html.

254.     The **September 10, 2021** date of the agreement is quite significant in light of events. Just the day before, on **September 9, 2021**, President Biden announced that all companies with more than 100 employees were required to implement COVID-19 vaccine mandates or require weekly testing of employees. This announcement must have been on the forefront of everyone's mind when the Collective Bargaining Agreement was signed. Nothing in the agreement gave Atlas any authority whatsoever, independent of a government-imposed mandate, to impose its own mandate. (In fact, as described below, the agreement explicitly protected Atlas employees from exposure to any unsafe conditions or events.)

255.     Following the early September communication from Goodwin-Peters regarding the federal contractor mandate, on **October 5, 2021**, Defendant **John Dietrich,** President & Chief Executive Officer of Atlas Air, sent an email to all Atlas employees saying, "President Biden recently signed an Executive Order providing for certain mandates related to COVID-19 for

federal contractors and subcontractors, and the U.S. government has now issued further guidance for implementing this Order." Dietrich wrote that "[t]hrough the course of the pandemic, we've been very clear in our intention that we would not mandate that our employees be vaccinated. However, as a federal contractor who flies the military and their equipment, we will be required to comply with the Order issued by the President."

256.     The **October 5, 2021** email claimed Biden's "Executive Order requires that <u>we determine the vaccination status of all of our U.S.-based employees. Therefore, we are now requiring all of our U.S. workforce to provide us with your vaccination status</u>." (Emphasis in original).

257.     The email went further than the federal pronouncement and announced that Atlas Air would soon roll out electronic vaccine passports ("electronic proof of your vaccination card") within the company.

258.     The email announced that Atlas Air would recognize religious and medical exemptions and would restrict workers' vaccine status information to "Human Resources, Legal and limited members of the COVID-19 Safety Team."

259.      Significantly, the Oct.5, 2021 email by Defendant John Dietrich announced that vaccinated employees would be paid "five hours of compensation" while unvaccinated employees would not.

260.     On **January 13, 2022**, the US Supreme Court struck down the OSHA mandate as unconstitutional. However, Defendant Atlas Air continued to maintain its Atlas-wide injection mandate. Neither Local 2750 nor the Teamsters voiced any concern or opposition to Atlas Air.

261.     Moreover, Atlas Air violated the Collective Bargaining Agreement's Art. 25 regarding scheduling ("The Company shall offer Out-Base assignments by system-wide seniority.

. .").  Specifically, Atlas Air has discriminated against Plaintiffs in bids for flights to certain Asian, South American and European bases—despite such destinations having NO laws or restrictions against unvaccinated crewmembers. The lack of any mandatory vaccination requirements for crewmembers was repeatedly transmitted via email to the union and company by citing the government websites of the destination countries that specified there were NO requirements at the time. That information was ignored, and the Atlas management-imposed travel bans on unvaccinated Atlas crewmembers remained in place.

262.    This discrimination and arbitrary retaliatory and punitive treatment of Plaintiffs have cost Plaintiffs significant monetary damages and emotional distress.

263.    Atlas Air's communications promised that Atlas employees' vaccination statuses would be kept confidential within "Human Resources, Legal and limited members of the COVID-19 Safety Team."  But in fact, Plaintiffs' and employees' vaccination statuses were widely disseminated throughout the company in violation of their medical privacy.

264.    Atlas Air's promulgation of COVID-19 hype and hysteria created a dangerous and hostile work environment throughout the company for Plaintiffs and employees who dared to question or defy the messaging. Atlas Air's panic-inducing policies produced instances of vicious shouting and screaming among Plaintiffs and other Atlas staff during trans-ocean flights, and occasional unsafe episodes of pilots leaving their cockpits to scream at coworkers for being unvaccinated or for voicing questions or criticisms of Atlas Air pandemic messaging.

265.     This toxic, cutthroat atmosphere continues through the present day, as Atlas employees suffering from vaccine injuries struggle to keep their injuries hidden, secret and suppressed in order to protect their careers. Teamsters' members within the company have openly

remarked that they look forward to the day that Plaintiffs will be terminated from the company, thus allowing vaccinated employees to rise in seniority and pay.

266.    On February 8, 2022, the Teamsters and Local 2750 actually announced that they had joined Atlas and the other Defendants in creating a program to recruit new, vaccinated and compliant hires to replace the plaintiffs upon plaintiffs' termination. Atlas and the Teamsters worked together to pay the pilot group $5,000 per new hire they refer to Atlas to replace the pilots who would be fired because of the vaccine mandate.

267.    On **March 30, 2022** The Executive Board of Teamsters Local 2750 traveled to the Teamsters Local 2750 office in Cincinnati, Ohio and conducted their quarterly Executive Board Meeting and General Membership Meeting.

268.    The Executive Board were surprised by the remote and in-person turnout, as the meeting was attended by approximately 100 members. According to Local 2750's newsletter #99, "During this meeting, **a spirited effort was made to pass** resolutions requiring 'the union to engage in any and all legal disputes in any and all jurisdictions related to disputes arising from the Atlas Air vaccine policies,' and requiring the 'union to donate $300,000 in total to the three following organizations:'" U.S. Freedom Flyers - $100,000, Airline Employees 4 Health Freedom (AE4HF) - $100,000, and Atlas Flight Deck Crewmembers Association (AFDCA) - $100,000.

269.    All three groups were known to oppose Atlas Air's impending vaccine mandate mass termination.

270.    The Teamsters Local 2750 newsletter downplayed the vote, claiming that "a spirited effort was made to pass" the resolutions. In fact, the "spirited effort" had passed, overwhelmingly. Indeed, the newsletter linked to a letter drafted by Teamster General Counsel William Wilder admitting all three resolutions had passed.  But the Teamster lawyer claimed the

resolutions conflicted with the Teamsters constitution, which Wilder claimed (falsely, it appears) gave all decision-making authority to Teamsters Executive Board members.

271.    Local 2750's #99 newsletter then stated: "While we appreciate the passionate engagement from these members, the resolutions discussed cannot be enacted." (Again: the resolutions were not merely discussed; they were passed by the membership.) "After legal review," claimed the newsletter, "Local 2750 legal counsel determined these resolutions violate the IBT Constitution and Local 2750 Union Bylaws and are therefore invalid."

272.    Wilder even claimed that informed medical consent had been falsely characterized by union members as a "right." Informed consent, said Wilder, "is nowhere mentioned as an object of the Local Union in Section 4 of the Bylaws."

273.    Instead of complying with the obvious wishes of membership to defy Atlas Air regarding the impending May 1 mass-termination of hundreds of employees, the Teamsters and Local 2750 provided a link for Atlas Air to "Please click" to identify and retaliate against members of the Atlas Flight Deck Crewmembers Association who opposed the company's mandates.  At no time did 2750 even pass on a message to Atlas Air executives regarding employee opposition to the unlawful mandates.

274.    Ironically, during this time period, the issues the Teamsters seemed most concerned about had nothing to do with illegal COVID-19 vaccine mandates. Local 2750 President Yngve Paulsen sent out an e-mail on April 15, 2022, touting the following accomplishments: (i) new pillows for all fleets with rest facilities; (ii) business class blankets of a better quality and larger size; (iii) replacing Maxwell House coffee with "better quality coffee"; (iv) including vegetarian hot meals "where meat will be provided separately and not premixed in a dish"; and (v) providing chopped fresh fruit in tray setups.

275.    All of the Defendants were aware of all the foregoing conduct and false statements set forth in this Complaint and participated in the acts that have caused massive pain, suffering, emotional distress, mental anguish and loss of job opportunities and future income.

276.    In the course of its actions, Atlas Air consistently acted in lockstep with the widely publicized goals of the Biden Administration. For purposes of these actions, whether by incentive or threat, Atlas Air has become a State Actor.

277.    In order line the pockets of Atlas Air executives in exchange for doing the government's bidding, the Biden Administration pumped in $407,000,000 in COVID-19 bailout money to a massively profitable corporation. Atlas refused to return the funds when questions were raised in a Congressional hearing on why such a profitable company deserved a $407,000,000 handout of taxpayers' money. In return, Atlas Air acted in concert with the Government to achieve the Administration's objective of coercing all Americans to take a COVID-19 vaccine. There is no other rational explanation for Atlas Air receiving such a windfall from the American taxpayers.

278.    Thus, Atlas Air is a "person" and a State Actor under 42 U.S.C. § 1983.

279.    The Biden Administration has effectively delegated its authority to the private sector and sought companies like Atlas Air to do its bidding. This has been effective: companies like Atlas Air gave its employees an unconscionable ultimatum: choose between their jobs or take an experimental, life-threatening gene therapy/vaccine, for a disease known to have a very high survivability rate of over 99% and for which effective alternative treatments now exist.

280.    The Government has acted in concert with Atlas Air and publicly supported its private mandate since the Biden Administration cannot legislate a public one. Atlas Air's mandate was preconceived. Its purpose was to effectuate the Biden Administration's will and be one of

the large, corporate examples so other big employers would follow suit. Atlas, its CEO Dietrich and SVP Goodwin-Peters are engaged in a *quid pro quo* arrangement whereby Atlas Air is enforcing the agenda the Biden Administration knows it cannot legislate or impose by fiat. Stated differently – the government acquires more power through the imposition of private employer mandates. In exchange, the Biden Administration is lining the pockets of big corporations and their executives like Atlas Air, Dietrich and Goodwin-Peters through policy or pecuniary gain at the expense of their own employees' lives.

281.    On information and belief, there have been numerous, private meetings between Dietrich and the Biden Administration regarding the vaccine mandate policies.

282.    These meetings, various comments by Dietrich, and Government financial support for Atlas Air show such a close working arrangement between Atlas Air and the Government that Atlas Air should be considered a State Actor for purposes of Section 1983.

283.    The U.S. Equal Employment Opportunity Commission ("EEOC") has taken the position that they do not and will not interfere with or prevent employers from following the guidelines and suggestions made by the CDC or state/local public health authorities about steps employers should take regarding COVID-19:

> The EEOC has received many inquiries from employers and employees about the type of authorization granted by the U.S. Department of Health and Human Services (HHS) Food and Drug Administration (FDA) for the administration of three COVID-19 vaccines. These three vaccines were granted Emergency Use Authorization (EUA) by the FDA. It is beyond the EEOC's jurisdiction to discuss the legal implications of EUA or the FDA approach. Individuals seeking more information about the legal implications of EUA or the FDA approach can visit the FDA's EUA page.

284.    The EEOC has not taken any actions much less made any public statements condemning these patently unlawful employment practices. For these reasons and others set forth

below, Plaintiffs are not required to first seek recourse via the EEOC prior to bringing their discrimination and/or employment claims.

285.    Also, irreparable harm will result from the delays associated with exhaustion of administrative remedies. Millions of people have been hurt and thousands have been killed due to the COVID-19 vaccines that Atlas Air mandated Plaintiffs take. Not only can these vaccines cause injury generally, but the gene therapies pose specific harms to Plaintiffs working in the airline industry, which has requirements that employees maintain a certain standard of health for safety purposes. Waiting 180 days for the EEOC process to complete or to receive a right to sue letter is not a viable option as irreparable harm is imminent not only for their jobs, but also for their safety and the safety of consumers.

286.    Additionally, the EEOC lacks the institutional capacity to resolve the particular types of issues presented given there are millions of employees across the United States who seek to challenge these mandated practices, and the EEOC does not have enough staff/personnel to review all of the claims. Also, the EEOC does not have the authority to address the Constitutionality of all the claims associated with the employment practices at issue and does not possess the institutional knowledge or authority to redress those matters relating to health, safety and welfare. Therefore, requiring Plaintiffs to exhaust administrative remedies would be futile, useless and inadequate to redress Plaintiff's employment issues and to prevent the irreparable harm.

### COUNT I
**Title VII, 42 U.S.C. § 2000e, et seq. ("Title VII")**
***Religious Discrimination – Failure to Accommodate***

**Employee Plaintiffs vs. Atlas Air, FSI and EncompassAir**

287.     Plaintiffs reallege and incorporate paragraphs 1 through 286 above as if fully set forth herein.

288.     At all relevant times, Atlas Air, FSI and EncompassAir have been corporations continuously doing business throughout the country engaged in an industry affecting commerce within the meaning of Title VII and had at least fifteen (15) employees.

289.     Atlas Air, FSI and EncompassAir mandated that all its employees take a COVID-19 vaccine or face termination. Their actions have left Plaintiffs with an unconscionable choice of either taking a COVID-19 vaccine at the expense of their religious beliefs or losing their livelihoods.

290.     Plaintiffs have sincere, religious beliefs that preclude them from taking a COVID-19 vaccine.

291.     Plaintiffs informed their employers of those beliefs and requested (or wanted to request) religious accommodations from the vaccine mandate. Plaintiffs provided their employers adequate notice.

292.     Their employers refused to engage in meaningful discussion or in the interactive process with Plaintiffs regarding their requests; or conveyed how their refusal to take a vaccine would impact their employers. Rather, their employers responded to Plaintiffs with announcements designed to deter Plaintiffs from exercising their sincere religious beliefs contrary to the purpose of asking for accommodations.

293.     Atlas Air, FSI and EncompassAir failed to provide Plaintiffs with reasonable accommodations for their sincere, religious beliefs; instead, they discriminated against Plaintiffs with adverse employment actions. The perpetual threat of unpaid leave is not a reasonable

accommodation. Rather, it is an adverse employment action. Atlas Air, FSI and EncompassAir thereby discriminated against Plaintiffs because of their religious beliefs.

294. Atlas Air, FSI and EncompassAir have engaged in these practices with malice and indifference to Plaintiffs' rights.

295. The employers' failure to provide religious accommodations has harmed and will continue to harm Plaintiffs.

296. Despite the fact that filing charges with the EEOC is mostly futile, many Plaintiffs have done so and many others are in the process of doing so.

<u>**COUNT II**</u>
**Title VII, 42 U.S.C. § 2000e, et seq. ("Title VII")**
***Religious Discrimination – Retaliation***

**Employee Plaintiffs vs. Atlas Air, FSI and EncompassAir**

297. Plaintiffs reallege and incorporate paragraphs 1 through 296 above as if fully set forth herein.

298. At all relevant times, Atlas Air, FSI and EncompassAir have been a corporation continuously doing business throughout the country engaged in an industry affecting commerce within the meaning of Title VII and had at least fifteen (15) employees.

299. The employers mandated that all its employees take a COVID-19 vaccine or face termination. Their actions have left Plaintiffs with an unconscionable choice of either taking a COVID-19 vaccine at the expense of their religious beliefs or losing their livelihoods.

300. Plaintiffs have sincere, religious beliefs that preclude them from taking a COVID-19 vaccine.

301.    Plaintiffs informed their employers of those beliefs and requested (or wanted to request) religious accommodations from the vaccine mandate. Plaintiffs provided their employers adequate notice.

302.    Atlas Air, FSI and EncompassAir violated Title VII when they responded to these requests by retaliating against Plaintiffs, informing them that they would effectively be terminated by being placed on indefinite unpaid leave in attempt to coerce them into taking a COVID-19 vaccine and ultimately doing so.

303.    The sole reason for the employers' adverse employment actions against Plaintiffs was to retaliate against them for their sincerely held religious beliefs.

304.    The employers have engaged in these practices with malice and indifference to Plaintiffs' rights.

305.    The employers' retaliation has harmed and will continue to harm Plaintiffs. Despite the fact that filing charges with the EEOC is futile, many Plaintiffs have done so and the remainder are in the process of doing so.


### COUNT III
**42 U.S.C. § 1983**
***Violation of Right to Privacy, Denial of Equal Protection and Due Process***

**All Plaintiffs vs. Atlas Air**

306.    Plaintiffs reallege and incorporate paragraphs 1 through 305 above as if fully set forth herein.

307.    Plaintiffs are citizens of the United States.

308.    At all times relevant hereto, Atlas Air was a State Actor and a person acting under the color of law. That is, Atlas Air has taken decisive employment actions that have caused Plaintiffs harm that is so impregnated with governmental character that it can be regarded as

government action. The government is compelling Atlas Air's actions whether through incentive or threat.

309.    Atlas is also acting under color of law as it has conspired with Government officials to leverage Plaintiffs' Constitutional rights against them in an effort to achieve the Biden Administration's goal of achieving universal vaccination and to acquire Plaintiffs personal, genetic information. Atlas Air and the federal government have acted in lockstep and set in motion a series of acts inflicting violations of Plaintiffs' Constitutional rights. Through private and public meetings, executive orders, and unlawful coercion and duress, Atlas Air has acted in concert with the federal government at the expense of their employees including Plaintiffs.

310.    First, the right to privacy. The Supreme Court has recognized a right to personal privacy or a guarantee of certain areas or zones of privacy in the penumbra of the Bill of Rights, including the First, Fourth, Fifth and Ninth Amendments, and in the concept of liberty guaranteed by the first section of the Fourteenth Amendment. The applicable cases hold that personal rights can be deemed fundamental or implicit in the concept of ordered liberty, and included in this is the guarantee of personal privacy.

311.    Applied here, Plaintiffs fundamental right to privacy includes the reasonable expectation to not be coerced or put under duress by Atlas to inject an unwanted, experimental, foreign gene therapy into their body to save their livelihoods.

312.    This privacy right also includes Plaintiffs' individual freedom to choose what information they want to share or disclose that is personal in nature; and the right to control the extent to which their medical information is shared and released. As a means of coercion, Atlas violates Plaintiffs' privacy rights when they broadcast their private information on internal memos, bulletin boards, and other communications.

46

313.     Next, **equal protection**. The Fourteenth Amendment, Section 1, to the United States Constitution provides:

*No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.*

314.     Prior to and after the October 2021 announcement of the vaccine mandate, those vaccinated were treated superior to and provided more preferential treatment than those who were not which included increase in pay, scheduling, benefits and privileges.

315.     Atlas knowingly and willfully discriminated against those who are not unvaccinated and treated persons who are vaccinated different from those who are not without lawful justification.

316.     Allowing similarly situated Plaintiffs (those who are vaccinated) to retain their jobs, be paid more, have greater privileges/schedules, and not be required to wear masks, is a facial deprivation of equal protection.

317.     While the mandate appears neutral on its face, in practice it denies Plaintiffs equal protection under the law. For example, the mandates deny equal protection to Plaintiffs who have closely-held religious beliefs that prevent them from being vaccinated. Because of Atlas's practices, Plaintiffs who hold these beliefs have suffered harm.

318.     Mandated vaccinations, masks and repeated PCR testing are substantial burdens. These employment practices do not have any significant health or safety benefit; thus, there is no legitimate interest promoted. To the contrary, the COVID-19 vaccines can cause death and permanent injury; and evidence suggests the vaccines are actually prolonging the pandemic. Further, natural immunity is more effective and lasts longer than a vaccine.

319.    Finally, substantive due process. The Fourteenth Amendment provides heightened protection against interference with certain fundamental rights and liberty interests. The liberty interests protected by the Due Process Clause of the Fifth Amendment includes not only the privileges and rights expressly enumerated by the Constitution and Bill of Rights, but also includes those fundamental human rights implicit in structured liberty.

320.    Plaintiffs have a fundamental liberty interest and right to bodily integrity and informed consent. This notion of bodily integrity has been embodied in the requirement that informed consent is generally required for medical treatment.

321.    The United States Constitution guarantees that government shall not "deprive any person of life, liberty, or property without due process of law," and precludes Atlas as a State Actor from infringing certain fundamental liberty interests no matter the process provided, unless the infringement is narrowly tailored to serve a compelling state interest.

322.    Here, Atlas' actions are those of a State Actor who lacks a compelling interest to impede or infringe upon Plaintiffs' fundamental rights and fails under any level of scrutiny. Plaintiffs have Constitutional and fundamental liberty interests in bodily integrity and informed consent; and a Constitutional and fundamental liberty interest in not being compelled to provide private medical information to Atlas.

323.    Atlas' vaccine mandates do not serve a legitimate, compelling state interest. While courts have found a compelling state interest in controlling the spread of infection from person-to-person in some instances, this is inapplicable here since these vaccines/gene therapies and masks do not prevent Plaintiffs from dying, being infected or transmitting COVID-19 to another person.

48

324.     Assuming the vaccines could be said to satisfy the interest of preserving public health, Atlas' mandate is not narrowly tailored since it is not the least restrictive means necessary as numerous, less restrictive means than vaccination exist that serve the public interest of protecting the public's health against COVID-19. For instance, antibodies acquired through prior infection provide protection, and as stated throughout, natural immunity has shown to be as equal to or provide greater protection than the COVID-19 vaccines. And safer, less restrictive treatments, preventatives or medications exist like the use of hydroxychloroquine, zinc and ivermectin that does serve the public's interests.

325.     As a direct and proximate result of Atlas' policies, practices, regulations and conduct, Plaintiffs have suffered harm.

326.     The conduct of Atlas as described herein represents a willful and conscious disregard for the treatment of private citizens under the law as to their right to privacy; and their actions shock the conscience of the average person and constitute an abuse of power that is malicious and purposeful.

### COUNT IV
**42 U.S.C. § 2000ff-1(a)(1) and (a)(2)**
*Genetic Information Non-Discrimination Act ("GINA")*

**Employee Plaintiffs vs. Atlas Air, FSI and EncompassAir**

327.     Plaintiffs reallege and incorporate paragraphs 1 through 326 above as if fully set forth herein.

328.     GINA prohibits discrimination based on genetic information. Specifically, it is unlawful employment practices for an employer to fail to refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee because of genetic information.

49

329.    GINA also prohibits employers from limiting, segregating, or classifying the employees of the employer in any way that would deprive or tend to deprive any employee of employment opportunities or otherwise adversely affect the status of the employee because of genetic information.

330.    Atlas Air, FSI and EncompassAir are employers within the meaning of GINA, and at all times relevant were engaged in an industry affecting commerce and has at all times had fifteen (15) or more employees.

331.    Plaintiffs are employees as defined by GINA.

332.    The employers have and continue to violate GINA by discriminating against Plaintiffs and other employees based on whether they have been taken a COVID-19 vaccine.

333.    COVID-19 vaccines are actually Virus-Based Gene Therapies according to the FDA's own definition. These vaccines are unequivocally based upon injecting genetic information into a person and changing or manipulating the person's genetic information.

334.    According to the FDA: "Gene therapy products are all products that mediate their effects by transcription and/or translation of transferred genetic material and/or by integrating into the host genome and that are administered as nucleic acids, viruses, or genetically engineered microorganisms."

335.    According to the CDC: "Messenger RNA, or mRNA, is genetic material that tells your body how to make proteins."

336.    According to Genome.gov: "mRNA acts as a cellular messenger. DNA, which is stored in a cell's nucleus, encodes the genetic information for making proteins. mRNA transfers a copy of this genetic information outside of the nucleus, to a cells cytoplasm, where it is translated into amino acids by ribosomes and then folded into complete proteins."

337.     According to Pfizer, its vaccine contains messenger RNA (mRNA), a kind of genetic material, and a piece of the SARS-CoV-2 virus' genetic material that instructs cells in the body to make the virus' distinctive "spike" protein and trigger the immune system to learn to react defensively, producing an immune response against the virus.

338.     As such, those who have been injected with a COVID-19 vaccine necessarily possess different genetic material or genetic information than those who do not. Atlas' employment practices discriminate or provide unequal opportunities based on an employee's COVID-19 status violates GINA.

339.     The employers unlawfully discriminated and violated GINA when they took adverse employment actions against Plaintiffs and other employees because they are not or refuse to be vaccinated.

340.     The employers unlawfully discriminated and violated GINA when they afforded better opportunities (i.e., routes, schedules and benefits) and greater compensation to those who are vaccinated than to Plaintiffs who are not; and requiring those who are unvaccinated to wear masks at certain times, while permitting those who are vaccinated to go without wearing masks.

341.     The employers have engaged in these practices with malice and indifference to Plaintiffs' rights.

342.     The employers' discrimination has harmed and will continue to harm Plaintiffs.

343.     Despite the fact that filing charges with the EEOC is futile, many Plaintiffs have done so and the remainder are in the process of doing so.

**COUNT V**
**42 U.S.C. § 2000ff-1(b)**
*Genetic Information Non-Discrimination Act ("GINA")*

**Employee Plaintiffs vs. Atlas Air, FSI and EncompassAir**

344.    Plaintiffs reallege and incorporate paragraphs 1 through 343 above as if fully set forth herein.

345.    GINA also makes it unlawful for an employer to request, require or purchase genetic information with respect to an employee or a family member of the employee.

346.    Polymerase Chain Reaction ("PCR") tests are used to amplify small segments of DNA which is genetic material. This is the same sort of test used for forensics, cloning, genome projects for mapping genes and DNA sequencing. Genetic test means a test that analyzes DNA, RNA or chromosomes for purposes of such as the prediction of disease or vertical transmission risks, or monitoring, diagnosis or prognosis.

347.    For genetic tests, the first step is extraction of genetic material from a human specimen either through blood, hair, or oral swab. This is the exact same process used in the PCR test required and requested by Atlas to detect the genetic material of COVID-19.

348.    Atlas Air, FSI and EncompassAir have and continue to violate GINA when requesting and requiring the genetic information from their employees by mandating they take the PCR test. They violates GINA by requesting and requiring its employees to have their genetic information collected via nasopharyngeal or nasal swab (the swab scrapes the cells from inside the nasal cavity which has the genetic material from the person for whom the specimen is collected).

349.    The employers violate GINA when they request their employee's vaccination status by asking Plaintiffs about their vaccination status as they are asking for their genetic information given the vaccines are gene therapies in violation of GINA. They limit, segregate, discriminate or classify employees in a way that adversely affects their opportunities or status.

350.     The employers have engaged in these practices with malice and indifference to Plaintiffs' rights.

351.     The employers' discrimination has harmed and will continue to harm Plaintiffs.

352.     Despite the fact that filing charges with the EEOC is futile, many Plaintiffs have done so and the remainder are in the process of doing so.

## COUNT VI

### *Breach of the Collective Bargaining Agreement*

### Atlas Pilot Employees vs. Atlas and Atlas Executives

353.     Plaintiffs reallege and incorporate paragraphs 1 through 352 above as if fully set forth herein.

354.     Defendants' actions against Plaintiffs have violated, and continue to violate, several sections of the Collective Bargaining Agreement, including Article 1(A)(4) ("the Company and Union will each comply with all applicable laws prohibiting discrimination against any Crew Member who is now, or may become, subject to the terms of this Agreement including age, race, sex, . . . religion, . . . handicap or disability, or any other characteristic protected by applicable local, state or federal law."   Indeed, recent communications by Atlas and Defendant Atlas executives have told Plaintiffs that Plaintiffs' religious and even medical exemptions to the vaccine mandates will not be recognized in the future.

355.     Under the Agreement, Management rights are laid out in Art. 1(G)(1), which provides a long list of rights retained by the Company, including to "direct its Crew Member

workforce; determine the appropriate number of Crew Members; hire, promote, and discharge Crew Members; establish and enforce rules of conduct; maintain discipline and efficiency; introduce new equipment; determine the location(s) of the work force," etc.  Under the ancient legal maxim *Expressio unius est exclusio alterius* ("the express mention of one thing excludes all others"), when a law or agreement includes a list of specific items, that list is presumed to be exclusive.  *Nothing in the Agreement's list of Company rights allows the Company to violate employees' bodily integrity by mandating injections of potentially dangerous experimental vaccines which do not provide immunity or prevent transmission.*[2]

356.    Art. 26(R) of the Collective Bargaining Agreement plainly forbids Atlas Air from exposing Plaintiffs to Unsafe Conditions: "1. Nothing in this Agreement will be construed to require a Crew Member to take any action if he reasonably believes that such action will result in substantial and imminent risk of harm to the Crew Member or his equipment."

357.    According to the US government's VAERS database, the vaccines have already led to the deaths of 26,000 Americans. Scholarly, peer-reviewed estimates suggest the VAERS database underreports adverse events from vaccines by a rate of at least 90%.  At trial, Plaintiffs will show that a number of vaccinated coworkers within the Atlas company have already suffered adverse effects and injuries following vaccinations.

358.    Art. 15(A)(1) of the Agreement plainly states that "The physical standards required of a Crew Member shall be the standards required by the Federal Aviation Administration (as

---

[2] Nor can there be any "emergency" exception argument allowing for Atlas to impose a vaccine mandate.  Art. 22H even provides a list of natural disasters and acts of God which may constitute exceptions over which "the Company has no control," including a natural disaster, a labor dispute, grounding of a substantial number of the Company's aircraft by government agency, war emergency, or acts of terrorism. The Agreement's specification of a "war emergency" evidence that other, contrived "emergencies," such as a virus pandemic posing a 4/100ths of 1% death rate for those under age 70, do not fall within such a catastrophic exception list.

outlined in 14 CFR Part 67 and as may be amended) . . . ."  Current FAA standards do not require vaccination for air crew members.

359.    Art. 15(C)(12) provides that "Medical records and other information obtained as a result of a Company required medical examination" or testing shall be "subject to safeguards as to their confidentiality in accordance with applicable law." Yet Atlas and other Defendants have repeatedly violated the medical privacy of Plaintiffs.

360.    Defendants have also violated the JUST CAUSE, DISCIPLINE, DISCHARGE AND PROBATION provisions of Article 19 of the Agreement. Plaintiffs have simply been told that they will be terminated on May 1 unless they submit to the experimental injections.

361.    Further, Atlas and the Defendant Atlas executives have violated Article 22, which requires that "Except as may otherwise be provided in this Agreement, *seniority will govern with respect to upgrade and* downgrade*, filling of vacancies, displacements, reduction in force (furlough), recall from furlough, Base and aircraft assignments due to expansion or reduction in aircraft and Base staffing, monthly schedules, vacation bidding and when otherwise required by the Agreement."* Article 22D requires that Atlas employees may lose their seniority ranks only upon proper discharge, retirement, death, resignation, extended absence or other terminal events.

362.    Yet Atlas Air and the Defendant executives have paid vaccinated employees more than unvaccinated employees, and have maneuvered to terminate large numbers of seniority-status crewmembers.

363.    Further, Article 25X plainly and clearly forbids Atlas Air from discrimination "against any Crew Member because of race, color, national origin, *religion*, creed, sex, age, *disability,* veteran status, marital status, or sexual orientation.

364.     The Atlas pilot Plaintiffs are third-party beneficiaries of the Collective Bargaining Agreement.

365.     Several of the Plaintiffs have either religious or medical objections or exemptions to the COVID-19 treatment injections.  Yet Atlas Air and the other Defendants have continued to demand that they be injected with the proven-dangerous, experimental, ineffective vaccine treatments.  This plainly violates Article 25X of the Agreement.

## COUNT VII
### *Fraud*

**All Plaintiffs vs. All Defendants**

366.     Plaintiffs reallege and incorporate paragraphs 1 through 365 above as if fully set forth herein.

367.     Defendants made (or participated in or approved the making of) numerous false statements to Plaintiffs as set forth above, including regarding the efficacy of COVID-19 vaccines and the fact that Atlas would offer reasonable accommodations for those with religious or medical objections to taking COVID-19 vaccines.

368.     Plaintiffs reasonably relied on those false statements. Some Plaintiffs relied on them to actually take the vaccine.

369.     As a direct and proximate result of these false statements, Plaintiffs have suffered harm.

370.     Defendants acted willfully and with malicious intent in making these false statements.

## COUNT VIII
### *Intentional Infliction of Emotional Distress*

**All Plaintiffs vs. All Defendants**

371.     Plaintiffs reallege and incorporate paragraphs 1 through 370 above as if fully set forth herein.

372.     Defendants acted intentionally or recklessly with respect to the conduct set forth in this Complaint.

373.     Defendants' conduct has been and continues to be extreme and outrageous.

374.     As a proximate result of Defendants' actions, Plaintiffs have suffered severe emotional distress.

375.     The harm caused by Defendants to Plaintiffs was reasonably foreseeable.

## **Prayer for Relief**

Plaintiffs demand judgment against Defendants as follows:

i.     An award of compensatory damages in appropriate amounts to be established at trial, no less than an average of $1,000,000 per Plaintiff (total of at least $159,000,000);

ii.     Punitive damages no less than $30,000,000 per Plaintiff or the maximum permitted by law as determined by the jury;

iii.     Preliminary and permanent injunctive relief enjoining Defendants from any further COVID-19 related mandates or restrictions on Plaintiffs or any prospective future employees;

iv.     An award of attorneys' fees and costs associated with this action;

v.     An award of prejudgment and post-judgment interest at the legal rate to the maximum extent permitted by law; and

vi.     Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Date: May 12, 2022

/s/ *Kenneth W. Ferguson*
Kenneth W. Ferguson Esq.
**JOHN PIERCE LAW P.C.**
1 East Broward Blvd., Suite #700
Fort Lauderdale, FL 33301
(954) 256-5646
kferguson@johnpiercelaw.com

*Attorneys for Plaintiffs*

Date: May 12, 2022

/s/ *John M. Pierce*
John M. Pierce
**JOHN PIERCE LAW P.C.**
21550 Oxnard Street
3rd Floor, PMB#172
Woodland Hills, CA 91637
(213) 279-7846
jpierce@johnpiercelaw.com

*PHV to be Submitted*

*Attorneys for Plaintiffs*

1

**VERIFICATION**

2

    I, Lane Caviness, declare:

3

    I have read the foregoing **Verified Complaint** and know the contents thereof.

4

I am informed and believe that the matters stated therein are true and on the ground

5

declare under penalty of perjury under the laws of the State of Florida that the same

6

7

are true and correct to the best of my knowledge.

8

9

    Executed at Key Largo, Florida on this 12th day of May, 2022.

10

*LANE CAVINESS*

11

Lane Caviness

12

13

05 / 12 / 2022

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

Doc ID: 92c4fb866acb8c1e9be215429244d61e7ad08f47

 **HELLOSIGN**

## Audit Trail

| | |
|---|---|
| **TITLE** | Vertification.pdf |
| **FILE NAME** | Vertification.pdf |
| **DOCUMENT ID** | 92c4fb866acb8c1e9be215429244d61e7ad08f47 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| **SENT** | **05 / 12 / 2022**<br>18:04:07 UTC | Sent for signature to Lane Caviness (lane.caviness@gmail.com) from elambert@piercebainbridge.com<br>IP: 170.199.255.200 |
| **VIEWED** | **05 / 12 / 2022**<br>18:04:31 UTC | Viewed by Lane Caviness (lane.caviness@gmail.com)<br>IP: 12.166.160.147 |
| **SIGNED** | **05 / 12 / 2022**<br>18:05:58 UTC | Signed by Lane Caviness (lane.caviness@gmail.com)<br>IP: 12.166.160.147 |
| **COMPLETED** | **05 / 12 / 2022**<br>18:05:58 UTC | The document has been completed. |